# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

JESSICA GARCIA, on behalf of her minor
child, MYISHA GARCIA,

     Plaintiff,

v.                                        CIV. NO. 05-0062  WPJ/WPL

BOARD OF EDUCATION OF ALBUQUERQUE
PUBLIC SCHOOLS, ELIZABETH EVERITT, in
her individual and official capacity, DEBI HINES,
in her individual and official capacity,

     Defendants.

## MEMORANDUM OPINION AND ORDER REVERSING ADMINISTRATIVE DECISION PURSUANT TO THE IDEA
### and
## DENYING DEFENDANT'S MOTION TO DISMISS ON GROUNDS OF MOOTNESS AND ESTOPPEL
### and
## ORDER DISMISSING CASE

THIS MATTER comes before the Court upon Plaintiff's appeal of an administrative

decision pursuant to the Individuals with Disabilities Education Act ("IDEA"), and Defendant's

Motion to Dismiss Plaintiff's Claims for Compensatory Education Based on Mootness and

Estoppel Grounds (**Doc. 90**).  Plaintiff has also alleged violations of other federal and statutes:

Title VI of the Civil Rights Act of 1964; Title II of the Americans with Disabilities Act ("ADA")

(42 U.S.C. § 12132); § 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794), and Equal

Protection under the Fourteenth Amendment.[1]

---

[1] The minor student, Myisha Garcia, turned eighteen during the pendency of this case,
which shifted legal standing under the IDEA from Myisha's mother, Jessica Garcia, to Myisha.

**Background**

The Court previously dismissed all of Plaintiff's substantive claims, except for the claim for administrative review. See, Doc. 129 (granting summary judgment and dismissal of Title VI race discrimination claim); Doc. 159 (granting summary judgment and dismissal of equal protection claim as to individual defendants on basis of qualified immunity); Doc. 158 (granting summary judgment and dismissal of disability discrimination claims, deferring ruling on IDEA claims); Doc. 157 (granting summary judgment and dismissal of equal protection claim as to entity Defendant).

What remains for the Court's review is the administrative appeal on Plaintiff's IDEA claim, and Defendants' Motion to Dismiss Plaintiff's Claims for Compensatory Education Based on Mootness and Estoppel Grounds (Doc. 90). The Court will address both matters in this Memorandum Opinion and Order because they are intertwined. Both parties have been allowed to file supplemental briefs. See, Docs. 152 and 153. The Individual Defendants remain in this lawsuit only in their official capacities. Thus, the only remaining Defendant is Albuquerque Public Schools.

A.      Summary of Plaintiff's Educational Background

Plaintiff Myisha Garcia ("Myisha") is a special education student with a reading disability who at one time attended Albuquerque Public Schools ("APS"). She began ninth grade at West Mesa High School in the fall of 2002. She is currently enrolled in Highland High School. The factual background pertaining to Plaintiff Myisha Garcia's ("Myisha") academic history is well

---

See, N.M.S.A. 1978, §28-6-1 (age of majority); 20 U.S.C. § 1415(m) (transfer of parental rights); 34 CFR § 300.517 (same); see also, Doc. 92 (Pltff's IDEA brief).

documented in the Court's previous Memorandum Opinions and Orders, which will not be duplicated here.  <u>See</u>, Docs. 129 and 157.

With the exception of the 2004-05 school year, the record shows that Myisha has a history of behavior problems, exhibiting physical aggression and bullying towards her peers, and defiance of authority.  During the 2004-05 school year, however, Myisha made changes which earned her a 4.0 grade point average for that period.  Myisha herself attributed this academic success to good attendance at school, because she wanted to improve her grades and get her diploma.  She also began to speak up and ask for help when she needed it, and attended classes whether or not they were interesting to her.  In the 2005-06 school year, Myisha started exhibiting her old behavior again, ditching classes, even those in which she was having no difficulty.

Myisha has also exhibited a pattern of truancy and has not attended school for what is now the third consecutive semester.  The most recent information regarding Myisha came from testimony of Molly Malloy at the hearing on October 30, 2006.  Ms. Malloy, interim head special education teacher at Highland High School ("Highland"), testified that Myisha has attended only one day of the fall 2006 semester at Highland.   Ms. Malloy's testimony is undisputed.

The thrust of Plaintiff's arguments is that Myisha's academic failures stem from the failure of APS (or "the District") to comply with the requirements of the IDEA in the planning and implementation of Myisha's special education curriculum and services.  APS contends that regardless of what APS could offer, Myisha's problems are the direct result of Myisha's troubled relationship with her mother and her own choice to reject the educational opportunities available to her.

B.     <u>Basis for IDEA Appeal</u>

The due process hearing was held in May 2004.  The Due Process Hearing Officer ("DPHO") ruled against Plaintiff on all claims.  Plaintiff appealed the DPHO decision.  The Administrative Appeals Officer ("AAO") entered her decision on December 20, 2004, finding in favor of Plaintiff on certain claims, including ruling that APS had deprived Myisha of a free appropriate public education ("FAPE") during the fall of 2003.  She ordered a remedy of one year compensatory education, which included an independent education evaluation concerning reading by January 20, 2005, provision of specialized reading instruction for Myisha based on the recommendations of the independent evaluator, and compensatory services in the area of reading instruction for a period of one year.  APS (Administrative Record) at 702-03.

Defendant partially appeals the administrative order.  APS seeks an affirmance of the findings of both the DPHO and AAO that the cause of Myisha's academic hardship was the indifference on the part of Myisha and her mother to Myisha's education, and that any failings on the part of APS had no substantive effect on Myisha.  Defendant also asks the Court to deny all of Plaintiff's requests for IDEA remedies, including the AAO's award of compensatory education, which Defendant contends was based on the AAO's improper reversal of a credibility determination made by the DPHO.

Plaintiff also partially appeals the AAO's order on several grounds, and seeks implementation of the AAO remedy as well as one year of specialized compensatory education in addition to the year recommended by the AAO.  Plaintiff also contends that the compensatory education should be an accelerated and intensified instruction designed to allow Myisha to complete a high school diploma or GED and move forward to post-secondary education as soon as possible. Plaintiff's supplemental briefing on the IDEA issue requests a revamping of the

AAO's recommendations.  Plaintiff's counsel suggests that the Court "look afresh at what compensatory education and services is appropriate now and in the future for Ms. Garcia, based on present circumstance."   Memo in Supp. of IDEA Remedy (Doc. 153 at 3).

## Discussion

The Court agrees with Defendant that Plaintiff has not administratively exhausted certain arguments raised in her IDEA brief, e.g., APS' use of the UNISYS computer system.  Those issues which are not addressed by the Court here are considered unexhausted, and will not be addressed herein.

## I.     Specific Arguments Raised by Plaintiff

Plaintiff raises other arguments as well: (1) that the AAO should not have considered the conduct of Myisha or her mother because the IDEA does not recognize a "comparative fault" analysis; (2) that Myisha's automatic disenrollment in January 2004 violated the IDEA; (3) that systemic dysfunction in the provision of adequate reading instruction to students with reading disabilities denied Myisha a FAPE; (4) that APS' blanket policies concerning provision of the IDEA related services of social work and psychological service did not meet Myisha's individual needs and denied her a FAPE; and (5) that Myisha did not receive an independent evaluation. [2]

Plaintiff does not explain how these issues fit within the issues which have been administratively exhausted, or how they fit within the context of a record review of the administrative decision. With the exception of the first issue, which is a legal issue, the Court will rule on these issues, based on the parties' pleadings and the additional evidence submitted at one

---

[2]  This last argument was raised as part of the basis for Plaintiff's request for additional evidence.  Doc. 91 at 6-7.

of several hearings the Court has held in this case (Doc. 146).  It should be noted that the

additional evidence was requested by Plaintiff.  See Doc. 91.

A.      Comparative Fault

The IDEA is a comprehensive statute enacted "to ensure that all children with disabilities

have access to a free and appropriate public education designed to meet their unique needs."  L.B.

ex rel. K.B. v. Nebo School Dist. 379 F.3d 966, 973 (10th Cir. 2004).  Relief under the IDEA is

limited.  The IDEA only authorizes a district court to award aggrieved parents "such relief as the

court determines is appropriate." 20 U.S.C. § 1415 (i)(2)(C).  Brown v. Bartholomew Consol.

School Corp., 442 F.3d 588 (7th Cir. 2006).  Monetary recovery in such suits is limited to

compensatory education and equitable remedies that involve the payment of money, such as

reimbursements for educational expenses that would have been borne by defendants in the first

instance had they properly developed and implemented an IEP.

"Comparative fault" as used by the Plaintiff in the context of IDEA claims, is a misnomer.

Relief under the IDEA is equitable, and within a court's discretion.  Thus, Plaintiff is incorrect

that the AAO should not have taken Myisha's conduct into consideration in the analysis.

Equitable considerations are relevant in fashioning relief.  Burlington v. Dept. of Education, 471

U.S. 359, 374 (1985).  Even where there is a violation of FAPE, there is no relief where a plaintiff

is not deserving of relief.  See, W.G. v. Board of Trustees of Target Range Sch. Dist., 960 F.2d

1479, 1486 (9th Cir. 1992) (parties' conduct is relevant in determining whether to award relief for

school district's denial of FAPE).  Accordingly, this argument has no merit.

B.      Automatic Disenrollment in January 2004

The thrust of Plaintiff's argument is that APS did not fulfill its obligations to provide

special education to Myisha after she was disenrolled from school in the spring of 2004.  Myisha

was absent from West Mesa High School ("West Mesa") where she was enrolled for the 2003-04

school year, for two reasons.  First, she had been suspended for her involvement in an altercation

with other students while she was still on juvenile probation.  Second, Myisha became pregnant in

December 2003.   She lived in a day shelter because of problems she was having with her mother

Jessica Garcia after she discovered that Myisha was pregnant.  Jessica Garcia moved out of the

school district and tried to transfer Myisha to Del Norte High School in the spring, but by that

time West Mesa had disenrolled Myisha, and Del Norte High School would not enroll Myisha for

that semester because she was considered a drop-out.[3]

Plaintiff argues that Myisha's automatic disenrollment violated the IDEA because Myisha

did not receive special education services during that time.  Plaintiff contends that APS should

have held a formal IEP meeting to determine a change in placement, and should have sought out

Myisha to provide her special education.  However, neither the DPHO nor the AAO found that

APS changed Myisha's placement by withdrawing her from the rolls in Spring 2004, after Myisha

failed to show up for the first ten days of school.

The Court received additional evidence concerning automatic disenrollment at one of the

hearings in this case.  (See, Doc. 146, Clerk's Minutes at 5-7).  It became clear from the evidence

admitted at that hearing that statistical disenrollment for purposes of state funding does not affect

a school district's responsibility to continue providing FAPE to students who cannot attend

school for some reason, and then return.  However, this does not mean that APS abandoned or

---

[3]  The Court has already reviewed this issue as a claim for race discrimination, and
determined that this "bureaucratic confusion" did not constitute racial discrimination.  See, Doc.
129 at 24-25.

otherwise failed in its obligation to continue providing education placement services for Myisha. A student does not go through a change in placement when she never shows up for the school semester, nor is an IEP required for a student who is not enrolled in school.  Further, any interventions APS might have set up prior to suspending Myisha would have been futile. Myisha's absence from school for that school year was due to either her own decision not to attend class or her aggressive behavior and acting out toward other students.  Myisha already showed unexcused absences for 65 out of 89 school days in the 2003 fall semester, and she had already demonstrated a complete disinterest in attending classes in non-traditional school settings. It was found that even while Myisha was incarcerated at a juvenile detention center, and was not allowed to skip classes, "she nevertheless continued to refuse to accept the educational opportunities presented to her."  APS 532.

C.      <u>Systemic Dysfunction in Provision of Adequate Reading Instruction</u>

This argument revolves around APS' decision offer Wilson training to special education teachers on a volunteer basis for the first few years of its implementation.  The Court has already addressed this issue extensively on Plaintiff's claim for violations of Equal Protection (Doc. 157 at 16), ruling that there is no statutory or constitutional right to a particular curriculum or reading method.  <u>See</u>, Doc. 131 Ex. A at 4 (hearing transcript of Court's rulings on Equal Protection claim); <u>see also</u>, Doc. 129 at 16.

Plaintiff searches for an ideal that is not mandated by the IDEA. There is no requirement that schools offer and implement new reading methods in a particular way (whether or not there is a "better" way).  Nor is it an issue here whether Wilson is a better reading method than any other specialized reading programs.  The state is not required to "maximize the potential of each

handicapped child commensurate with the opportunity provided nonhandicapped children."
Board of Educ. of Hendrick Hudson Central School Dist., Westchester County v. Rowley, 458
U.S. 176, 206-07 (1982). Accordingly, this claim likewise has no merit.

D.      APS' Policies Regarding Social Work and Psychological Service

        Defendants contend that Plaintiff did not litigate any issues regarding psychological
services on the administrative level. Plaintiff's contention that Myisha should have been afforded
psychological services instead of social work services is entirely meritless. The IDEA does not
limit or dictate which health care professionals should provide psychological services to students.
Moreover, the additional evidence submitted, including testimony from the school district's lead
psychologist, indicates that under the model for most urban school districts, clinical social
workers provide direct treatment and therapy to students who need such services because of the
social workers' training and experience which focuses on therapy and treatment. Training of
psychologists focuses on therapy training and experience clinical social workers are better trained
to provide direct treatment to students in need of psychological services.

        The issue of whether adequate social work services were provided to Myisha was raised at
the administrative level. See, e.g., APS 873, 874. Both the DPHO and AAO found that the
District had taken steps to identify Myisha's problem behaviors, and that it had addressed these
problems with positive behavior inventions and strategies, including social work services. APS
555 and 686. Although the AAO found that the District had failed to assess the need for social
work services in the May 2002 IEP, the AAO determined that this procedural failure did not
result in a denial of FAPE, noting that the "District does not provide direct social services to
students unless they fall under the eligibility of "emotional disturbance" which was not shown to

9

be appropriate for Myisha.  APS  694, ¶ 23.

Plaintiff revisits the social work services issue here, arguing that a more aggressive provision of social work services would have benefitted Myisha in that it would have had an effect on her lack of interest in her education, her chronic truancy, and the conflicts between her and her mother.  Plaintiff fails to provide evidence that APS has a policy, or had a policy in the past, of not providing social work services for students whose primary problem is truancy.

The additional evidence, including testimony by APS's lead social worker, does not lead to that conclusion.  Referrals for truancy trigger other systems (such as the student's IEP team and mental health team) which are in place as a first line of intervention to address that problem.  Doc. 146 at 2.  There is usually minimal intervention by social workers in order to avoid the possible stigma of sending the student for social work services, and to encourage the student to develop skills to facilitate the process and come up with a solution.  A social worker can reconvene the IEP team to address the truancy issue, or to try to identify barriers to the student's attendance.   However, this use of social worker services does not constitute a "policy" by APS to not provide these services to truant students.  Plaintiff has not met her burden of showing that Myisha was denied a FAPE either because of the provision of adequate social work services in the relevant school years, or because of an alleged "policy" regarding provision of such services to truant students.

D.	APS' Failure to Provide Independent Evaluation

Plaintiff asserts that APS violated the IDEA's "stay put" mandate by failing to implement the AAO's order pending this litigation -- specifically, the order for an independent evaluation and a detailed reading program for Myisha.  APS 703.

10

The IDEA contains a "stay put" provision (also referred to as a "pendent placement provision") which controls the manner in which an educational placement may be changed while proceedings under this statute are pending.  This provision states, in relevant part:

> ". . . during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement."

20 U.S.C. § 1415(j).  Under this provision, all handicapped children, regardless of whether their case is meritorious or not, are to remain in their current educational placement until the dispute with regard to their placement is ultimately resolved. Board of Educ. of Pine Plains Central School Dist. v. Engwiller, 170 F.Supp.2d 410, 413 (S.D.N.Y.,2001).  An administrative decision in favor of the parents is equivalent to an agreement between the state agency and the parents and, therefore, represents the child's current education placement for purposes of the IDEA's "stay put" provision.  See, 34 C.F.R. § 300.514(c) (2004); Sch. Comm. of Town of Burlington v. Mass. Dep't of Educ., 471 U.S. 359, 373 (1985); Bd. of Educ. v. Schutz, 290 F.3d 476, 482-84 (2d Cir. 2002).

It is not clear whether Plaintiff's specific objections to APS' conduct come under the "stay put" provision.  The relevant case law, as well as the legislative history of the provision, appear to limit the applicability of the provision to school placement.  See, e.g.,  Board of Educ. of Pawling Central School Dist. v. Schutz, 290 F.3d 476, 481 (2d Cir. 2002) (citing Sch. Comm. of Town of Burlington, 471 U.S. at 373-74) (parents seeking tuition reimbursement after unilaterally changing their child's *school* placement during the pending of the review proceedings "do so at their own financial risk") (emphasis added); Georgia State Dep't of Educ. v. Derrick C., 314 F.3d 545, 552 (11th Cir. 2002) (affirming decision ordering school district to reimburse

parents for tuition paid for school where child was enrolled while *school placement* issue was being resolved) (emphasis added); <u>see also</u>, S. Rep. No. 185, 108th Cong., 1st Sess. 2003, (Section X, "Changes in existing law"); H.R. Rep. No. 614, 104th Cong., 2nd Sess. 1996, (Amendments to Part A of the Individuals with Disabilities Education Act, "Procedural Safeguards").  I am reluctant to extend the "stay put" provision to curriculum matters, which are separate from a child's placement in a particular school.

Further, the additional evidence which is now part of the record shows that Myisha did in fact receive a thorough evaluation to determine an appropriate reading instruction for her in the fall of 2004, just prior to the Administrative Appeal Hearing. Myisha was evaluated by Ms. Barbara Landgraf, an APS educational diagnostician who has evaluated 200 students a year for approximately 13 years.  Plaintiff does not specify exactly how Myisha was shortchanged by having Ms. Landgraf do the evaluation.  As Defendant notes, the  results of the evaluation, and Myisha's special education placement for 2004-05, were reviewed  by  Myisha and her mother, neither of whom disputed its quality or conclusions.  Nor did they dispute the credentials of Ms. Barbara Landgraf, the person who performed the evaluation.

Ms. Landgrath testified at the August 22, 2006 hearing, <u>see</u>, Doc. 146, Clerk's Minutes at 12.  Based on this testimony, I am convinced that this evaluation more than satisfied the requirements of an evaluation performed by an "independent evaluator" as subsequently ordered by the AAO.   Ms. Landgrath performed the same type of assessment review that would have been deemed necessary by an independent evaluator, and had the added advantage of easier access to Myisha, her student file and her teachers, including observing Myisha in a Wilson class.

The "stay put" provision does not apply here for another reason.  The evaluation was done

before the AAO issued her order, and thus, there was no order which could be deemed to become

an "agreement" between the District and parent.  The only question would be whether the

evaluation that was done by Ms. Landgrath was sufficient to meet the evaluation later ordered by

the AAO – which I find did meet the evaluation criteria ordered by the AAO.

I agree with Defendant that Myisha has also received the benefit of an appropriate

specialized reading program, also ordered by the AAO.  It is not disputed that Myisha was placed

in a Wilson reading program  -- the lack of which program ostensibly spawned this lawsuit -- for

the school year 2004-05.  See, Compl., ¶¶ 30-38.  Apparently, Myisha's placement in a Wilson

reading program was not the panacea for Myisha's academic difficulties.  As mentioned

previously, Myisha experienced academic success for the 2004-05 school year when, according to

her own testimony, she decided to attend class and focus on her education.  Despite Myisha's

enrollment in a Wilson class for the 2005-06 school year, Myisha did not achieve academic

success because she reverted back to her old behavior of ditching classes and running away from

home.

Therefore, I find no merit to Plaintiff's assertions that APS violated the AAO's "stay put"

order.  Even if the IDEA's "stay put" provision applied to the AAO's order regarding an

independent evaluation and providing Myisha with an appropriate and detailed reading program, I

find that Myisha has already received both.  The AAO's order is unclear what more, if anything, is

encompassed within the award of one year compensatory education.  Plaintiff seeks an additional

year of compensatory education.  She has also submitted a "new and improved" version of what

that might include, and she urges the Court to adopt this as suitable relief should she prevail.

Doc. 153 at 3.  Thus, the question that remains is whether Myisha is entitled to compensatory

education under the IDEA, in addition to what APS has already provided.  The resolution of this question involves a review of the administrative decision.

Before conducting that review, however, I address Defendant's motion which seeks dismissal of Plaintiff's claims outside of a record review.

## II.   Defendant's Motion to Dismiss on Mootness and Estoppel Grounds (Doc. 90)

Defendant argues that Myisha is not entitled to relief based on mootness and estoppel grounds.

Judicial estoppel in the context of an IDEA claim means that a party "is not permitted to maintain inconsistent positions in judicial proceedings." Citizens Bank v. C&H Constr. & Paving Co., 89 N.M. 3670, 365 (Ct.App. 1976); Eads Hide & Wool Co. v. Merrill, 252 F.2d 80, 84 (10th Cir. 1958) (party may not assume contrary position in legal proceeding after successfully asserting certain position in a legal proceeding, simply because his interests have changed"). Defendant contends that Myisha is estopped from seeking compensatory education where she has not taken advantage of her entitlement to compensatory education already awarded to her on the administrative level.

Plaintiff's legal positions have remained constant, whether or not they ultimately have merit.  Admittedly, there is considerable inconsistency between Plaintiff's legal position and her conduct exhibited throughout this litigation, reflecting a disinterest in obtaining any education at all.  This inconsistency may provide a springboard for discussion of Defendant's legal position, but is not a basis for judicial estoppel.

Defendant relies on a mootness defense to bar Plaintiff's request for a compensatory education remedy, thus sidestepping a record review. Defendant contends that Plaintiff's case is

14

moot because Myisha has already received what the AAO ordered her to receive in the way of a independent evaluation of appropriate reading methods, and the reading instruction which Plaintiff has been seeking since the start of this litigation.  Myisha has not attended school for three consecutive semesters.  Defendant objects to awarding additional years of compensatory education "just in case" Myisha decides to stop what Defendant describes as her self-sabotaging conduct.

The mootness defense in IDEA cases concerns an issue of justiciability, generally where the student has aged out of eligibility for special education. Plaintiff cites to two seminal cases discussing mootness, to support her contention that a defense of mootness cannot be used to void a compensatory education remedy.  See, T.S. v. Independent School Dist. No. 54, Stroud, Oklahoma,, 265 F.3d 1090 (10th Cir. 2001) (school district's obligations to student ceased upon his graduation); Honig v. Doe, 484 U.S. 305 (1988) (accepting mootness defense for 24 year-old emotionally handicapped individual of precursor statute to IDEA, but rejecting the defense for 20 year-old emotionally handicapped individual who had not yet completed high school, given individual's continued eligibility for educational services under the statute).  Defendant contends these two cases should be limited to their particular facts, and that a mootness defense to bar relief is therefore not precluded.

I agree with Plaintiff that a mootness defense is not suitable where there is no issue of justiciability.  Plaintiff is not barred from pursuing her claim for compensatory education solely because of nonattendance.  On the other hand, the substance of Defendant's arguments are worthy of this Court's consideration in conducting a review of the record, and when deciding whether Plaintiff is entitled to relief.

Thus, Defendant's motion to dismiss plaintiff's claims on mootness and estoppel grounds will be denied.  The Court will consider Defendant's arguments in the context of whether equitable relief is appropriate.

**III.     Review of Administrative Record**

My review of the administrative record includes additional evidence taken at hearings held on June 7, 2006 (Minutes, Doc. 125), August 22, 2006 (Minutes, Doc. 146), and October 30, 2006 (Minutes, Doc. 151).

A.     <u>Legal Standard</u>

Judicial review in IDEA cases is not the typical administrative review.  The district court must "independently review the evidence contained in the administrative record, accept and review additional evidence, if necessary, and make a decision based on the preponderance of the evidence, while giving 'due weight' to the administrative proceedings below."  <u>Murray v. Montrose County Sch. Dist</u>., 51 F.3d 921, 927 (10th Cir.1995), <u>cited in</u>, <u>O'Toole By and Through O'Toole v. Olathe Dist. Schools Unified School Dist. No. 233</u>, 144 F.3d 692, 698 (10th Cir. 1998).

This standard of review is called a "modified de novo standard."  In applying this standard, the Court must give "due weight" to the hearing officer's findings of fact, which are considered prima facie correct.  <u>Murray</u>, 51 F.3d at 927.  Although the district court may accept additional evidence, such evidence is merely supplemental to the administrative record.  <u>See</u>, 20 U.S.C. § 1415(i)(2)(B); <u>Ojai Unified Sch. Dist. v. Jackson</u>, 4 F.3d 1467, 1472-73 (9th Cir.1993). The district court's proceedings must maintain the character of review and not rise to the level of a de novo trial.  <u>Id. at 1473</u>, <u>cited in</u> <u>L.B. ex rel. K.B. v. Nebo Sch. Dist</u>., 379 F.3d 966, 973-74 (10th

Cir. 2004).

B.      Administrative Findings and Conclusions

The DPHO found that Plaintiff successfully demonstrated three irregularities relating to

her educational plan as it relates to the IDEA: (1) failure to implement the reading portions of

Myisha's 2002 IEP; (2) failure to have a current IEP in place when Myisha returned to high

school in the fall of 2003; and (3) failure to ensure that Myisha's teachers implemented an IEP in

the fall of 2003 (instead of relying on the May 2003 IEP).  APS 559-60.

However, the DPHO  concluded that these "lapses" did not result in a denial of access to

education, or a denial of FAPE.  APS 560, 533.  The DPHO found that APS or any deficiencies

on the part of APS did not cause Myisha's academic failures:

> . . . Petitioners have failed to demonstrate that at any time relevant to this matter any
> efforts on the part of the district, no matter how well-motivated or perfect in their
> execution, would have been successful, given the student's negative attitude and frank
> refusal to come to school.

APS 547;

> [the May 2002 IEP team found that Myisha could do the assigned work] but that the
> following purposeful behavior prevented her from succeeding: alcohol/drug use, pulling
> the fire alarm, gang affiliation, absences, etc.

APS 534.  Regarding the finding that the reading instruction for spring 2002 was not delivered

consistent with the provisions of the May 2002 IEP:

> . . . given the student's excessive absences and other behavior . . . no educational harm
> flowed from this defect.

APS 531.   The DPHO stated the following as reasons for her finding that Plaintiff did not show a

denial of FAPE:

> . . . [Myisha has shown an] unwillingness to attend school, an inclination to squander

educational opportunities and to thwart efforts geared toward permitting her to achieve some level of academic success. She has repeatedly shown defiance, both in the traditional school setting and in the [juvenile detention center and the residential treatment center] settings. She has cursed at staff, refused to make up work, and refused to participate when she was in class. She has run away from home on numerous occasions, has at a minimum experimented with drugs, alcohol and gang behavior, has bullied and fought with her peers, and has assaulted her parent, her parent's boyfriend and her brother. . . The student ditched classes, picking carefully amongst her classes and not choosing – as [Plaintiffs] allege to skip only those classes in which her reading disability posed a significant impediment to her participation. A pattern of manipulation emerges, with the student even admitting that she participated in counseling only so that she could "get money."

  To lay all of this at the feet of a school district, to say that even a small fraction of these behaviors is a result of a failure on the part of school staff to address this student's disability is simplistic. The student is not a victim of the school system or any of its failings. She has the power and responsibility to change her life, and certainly no evidence indicates that a school district – any school district – has a magic instructional wand it may wave to create a motivated student or to counteract a student's home life.

  Simply put, [Plaintiffs] have failed to prove causation. A school cannot provide FAPE to a student who is not there, either physically or be virtue of her attitude. Nor have [Plaintiffs] successfully proven that any behavioral intervention by the district would have resulted in a "present" student  – certainly dramatic behavioral interventions and intensive psycy9logical counseling in closed environments did not result in the student's taking advantage of educational offerings when she was housed in the [juvenile detention center or residential treatment center].

APS 561-62.

  The AAO agreed in most part with the DPHO's findings and conclusions, recognizing that "[t]echnical deficiencies in meeting IDEA requirements alone do not constitute a denial of FAPE, there must be a loss of educational opportunity." APS 692. Specifically, the AAO found that Plaintiff had proved various procedural violations with respect to Myisha's IEP's, such as failure to implement reading instruction components and failure to assess the need for social work services as specified in the May 2002 IEP. APS 692. She also found additional procedural violations in the December 2003 IEP.

  Like the DPHO, the AAO considered the question of causation in the analysis. She

ultimately found that these violations did not rise to the level of a denial of FAPE because of the "very probable inability" the school would have had in implementing these IEP's due to Myisha's excessive absences. APS 692. The AAO also noted the efforts on the part of APS to involve Myisha's mother, without success. APS 699. Thus, the AAO agreed with the DPHO that Myisha's academic hardship was the result of her own and her mother's indifference to her education, and that failings on the part of APS had no substantive effect on Myisha.

The AAO's conclusion that relief was appropriate turned on one specific finding: that APS failed to have a current IEP in place for fall 2003, and that this failure could not "be blamed on Myisha's behaviors or truancy." APS 698. However, the AAO then speculated on whether having an IEP in fall 2003 prior to December would have made a difference:

> Whether having an IEP in place would have altered the semester experience for Student is **pure conjecture** as to what might have been -*maybe* District would have seen the need for further testing and remedial services for Student's serious reading deficits, *maybe* a social worker would have been provided to assist Student with school related problems, *maybe* she would have been given Books on Tape, *maybe* nothing would have changed.

APS 698-99 (emphasis added).

C.     Court's Findings Regarding Administrative Decision

The AAO's award of compensatory education was based on a procedural omission by the District: the absence of an early fall 2003 IEP. The question which governs the Court's inquiry in suits which challenge whether IEP safeguards have been met (20 U.S.C. § 1415(e)(2)) is twofold: (1) has the school district complied with the procedures set forth in the Act, and (2) is the IEP reasonably calculated to enable the child to receive educational benefits? Rowley, 458 U.S. at 206-07. My inquiry here is whether, from a review of the administrative record and based on a preponderance of the evidence, the requirements of the IDEA were met. Murray v. Montrose

County Sch. Dist., 51 F.3d 921, 927 (10th Cir.1995).

Both administrative law judges found several procedural deficiencies committed by the District which did not amount to substantive violations of the IDEA.  This is because procedural and technical deficiencies in the IEP's cannot support a claim that a FAPE has been denied.  See, CJN v. Minneapolis Public Schools, 323 F.3d 630, 638 (8th Cir. 2003).  Most circuits agree that where a procedural violation of the IDEA has occurred, the violation must cause damage before relief is appropriate.[4]

The AAO departed from the DPHO's findings in concluding that the absence of a current IEP for the fall of 2003 constituted a procedural omission sufficient to result in a substantive harm.  The omission was apparently due to error by the District's computer system, which had showed that Myisha had a current IEP for the fall 2003 semester, when the last IEP had actually been done in May 2002.[5]

I am required to presume the correctness of the AAO's findings of fact.  See, Murray, 51

_____

[4]  See, e.g., Urban v. Jefferson County School Dist., 899 F.3d 720 (10th Cir. 1996) (procedural defects in IEP not denial of FAPE); Erickson v. Albuquerque Public Schools, 199 F.3d 1116, 1120 (10th Cir. 1999) (Procedural violation of the IDEA does not preclude a finding that the school district provided a FAPE; Adam J. ex rel. Robert J. v. Keller Independent School Dist., 328 F.3d 804, 811-812 (5th Cir. 2003) (those complaining of procedural violations of IDEA must also show substantive harm); Evans v. District No. 17 of Douglas County, 841 F.2d 824 (8th Cir. 1988) (failure to perform evaluations did not deny FAPE because there was no evidence of harm to her education); Doe v. Alabama State Dept of Educ., 915 F.2d 651 (11th Cir. 1990) (delay in rendering hearing decision beyond statutory time did not deny child FAPE); Doe v. Defendant I, 898 F.2d 1186 (6th Cir. 1990) (technical deviations do not render IEP invalid).

[5]  When the DPHO addressed the issue of the missing IEP, she did not give a blank pass to the school for its error, noting that teachers should have copies of current IEP's in the student's file.  APS 544, ¶ 120, 123.  Yet she found that the absence of a current IEP would not have made a difference, even after listening to Myisha's professed "changed attitude toward school [and learning to read]".  APS 562.  In other words, given all the evidence, Plaintiff had not met her burden that having a current IEP for the fall of 2003 would have made a difference.

F.3d at 927 n.11.  However, I find that the AAO's conclusion -- that the lack of a current IEP in the early fall of 2003 resulted in a substantive denial of FAPE -- is not based on a preponderance of all the evidence on the record.  While the AAO's award of compensatory education was based on this single procedural deficiency, the AAO did not find that harm actually resulted to Myisha's education as a result of this deficiency.  The AAO granted relief on a "pure conjecture" of harm. APS 698.

I find that the preponderance of the evidence on the present record dictates a reversal of the  AAO's decision granting relief.  See, L.B. ex rel. K.B. v. Nebo School Dist., 379 F.3d 966, 973-74 (10th Cir. 2004) (the IDEA requires a district court to grant a judgment on the record based on its own ascertainment of the preponderance of the evidence).  As mentioned earlier, equitable considerations are relevant to whether a plaintiff asserting an IDEA claim is deserving of relief.  Burlington v. Dept. of Education, 471 U.S. 359, 374 (1985).

Both administrative law judges acknowledged a basic causation problem in Plaintiff's case, given Myisha's truancy and disciplinary problems, and her mother's lack of interest in becoming involved on any level with her daughter's education. Yet, the AAO found that APS's failure to deliver reading instruction for spring 2002 consistent with the May 2002 IEP did not result in any educational harm, while at the same time finding that the lack of a current IEP for the fall of 2003 prevented the flow of educational benefit.  The AAO did not provide a basis for this legal conclusion except "pure conjecture."   APS 698.  This conclusion that the IEP deficiency resulted in substantive harm is not consistent either with the AAO's other findings (where the technical deficiencies did not result in a denial of FAPE) or with the weight of evidence in the record which weighs against assigning substantive harm to the oversight.

21

I fail to see why the AAO's findings on lack of causation for the other procedural deficiencies do not apply to the missing fall 2003 IEP.  A fall 2003 IEP would have had no benefit for a student who was not interested and chose not to be present – in any sense of the word –  to receive that benefit.  An award in an IDEA case must be "reasonably calculated to provide the educational benefits that likely would have accrued from special education services the school district should have supplied in the first place." Reid v. Dist. of Columbia, 401 F.3d 516, 523 (D.C.Cir. 2005).  This inquiry "must be fact-specific." Id. at 524.

Myisha did not attend West Mesa in the spring of the 2002-03 school year.  For most of the previous school semester, Myisha lived in a juvenile detention center and residential treatment center after having been arrested and charged with aggravated battery and aggravated assault against a household member for attacking her mother and brother with a deadly weapon. The DPHO, who had heard the testimony of Myisha and her mother, and observed their demeanor first-hand, determined that Myisha could not have benefitted from a more current IEP in the fall of 2003 because or her absence from school.  I agree with APS that the AAO's conclusion was based on an improper rejection of the DPHO's credibility determination.

Thus, given Myisha's pattern of truancy for that school year, it cannot be said that a current IEP for fall 2003 would have afforded any education benefits to Myisha that were not already in place.  The AAO's "pure conjecture" rationale does not amount to a "reasonable calculation."

The AAO relied on two cases to conclude that Myisha suffered harm by the lack of a fall 2003 IEP (APS 697).  See, Knable by Knable v. Bexley City Sch. Dist., 238 F.3d 755, 759 (6th Cir. 2001) and Dept of Ed. of State of Hawaii v. Rae, 158 Supp. 2d 1190 (D.Ha. 2001).  These

cases do not provide a legally sound basis for that finding because they are substantially distinguishable from the present case.  First, there was no existing IEP in either of those cases.  In Knable, only a draft IEP existed.  In Rae, no initial evaluation was conducted until the student's junior year.  In the present case, an initial evaluation and IEP – albeit outdated by a year -- had already been completed and implemented for Myisha.  Second, both students in those cases wanted to be in school.  By contrast, Myisha has exhibited, and continues to exhibit, her indifference toward school by nonattendance for the third consecutive semester, making a deliberate choice not to attend.

Plaintiff suggests that Myisha's negative behaviors stem from her poor academic performance and academic frustrations, based on a psychological report admitted at the hearing. The report described Myisha as a "youngster who will encounter increasingly greater frustration with a school environment which puts her at risk for increased depression and increased drug usage.  See, Resp. in Opp. to Deft's Supp. Brf on Mootness and Estoppel Grds., Doc. 156 at 5. However, the DPHO noted that Plaintiff had not shown that Myisha's indifference to school and other negative behaviors were the result of an "unaddressed or underaddressed reading disability." APS 560.

The AAO did not reject the DPHO's finding that Myisha's aggression, acting out and truancy were not the result of Myisha's reading disability.  The evidence, including additional evidence on this issue, bears out the DPHO's finding.  See, Doc. 146 at 17 (testimony by APS social worker).  As early as May 2002, the multidisciplinary team in charge of Myisha's educational placement determined that her behavioral problems were "more likely due to choices made by the student that a result of the student's learning disability."  APS 530.  Myisha skipped

classes whether or not they were giving her trouble, and her other problem behaviors were not limited to the school environment, but characterized her home life as well.  Nor was her chronic truancy related to her academic disability.  For example, there is evidence that Myisha was late for class generally because she waited for her boyfriend in the mornings, and that unless her mother drove her, she usually missed classes because she refused to ride the school bus.

The common theme in this litigation has been Plaintiff's lack of interest in obtaining an education, regardless of what opportunities and specialized programs are made available to her. The proof is in the success she attained in the school year 2004-05 simply because she made the choice to do so. The evidence in the record, reinforced by the additional evidence submitted in this case, comports with Defendant's position:  that no harm resulted from any of the procedural omissions deficiencies committed by the District.

Conversely, Myisha's academic failures are due to her own attitude and indifference to her education, and from Jessica Garcia's rejection of her daughter's education needs, rather than any shortcomings on the part of APS.  The record indicates a history of unsatisfactory and unsuccessful attempts to involve Jessica Garcia in the planning and guidance of her daughter's education, or even to communicate with her.  APS 556, ¶ 24; APS 684, ¶ 62.

Myisha shows no change for the better.  Myisha testified at the August 22, 2006 hearing, and was excused from subsequent hearings so that she could attend classes.  On October 30, 2006, the Court held another status conference to hear additional evidence on Myisha's progress for the current school semester at Highland.  As previously noted in this opinion, the undisputed evidence establishes that  as of October 30, 2006, Myisha has attended a grand total of one day of school for the fall 2006 semester.  APS has made what I would describe as an exceptional number

of attempts to contact both Myisha and her mother, including phone calls to Jessica Garcia, calls to what Jessica Garcia thought was Myisha's cell phone number (Myisha is not living at home), three certified letters to Jessica, attempts by the head special education teach to conduct a home visit (unsuccessful because she could not gain access to the gated residence) – all to no avail.  It would not be an exaggeration to say that Myisha has made it nearly impossible for APS to provide her with an education.

The IDEA does not provide a remedy for this kind of case -- where the access to a free and appropriate public education is wide open, but the student refuses to attend school and refuses the numerous and extensive educational opportunities afforded to her.   It is clear that Myisha has had no interest (with the exception of the 2004-05 school year) in obtaining an education, and that she continues to have no interest.  It is also clear to the Court that it is the motivation of Myisha's attorney, and not Myisha herself, that is driving this litigation.[6]  Even the AAO recognized the futility of granting compensatory education if Myisha  if her "absences defeat the efficacy of such program."  APE 703.   Since December 20, 2004, the date the AAO's opinion was issued, Myisha has done just that.

There is no basis for granting what is essentially equitable relief to someone who neither deserves it nor wants it.  The suggestion by Plaintiff's counsel urging the Court to award such relief  just in case Myisha changes her mind about getting an education at some point in the next few years is unnecessary and wasteful.  Defendant is correct that no one is forcing Myisha out of high school or academic opportunities.  Myisha presently has ample time in which to complete

_____

[6] The evidence presented at the August 22, 2006 hearing established that Myisha's attorney was the one who enrolled Myisha at Highland for the fall 2006 semester.

25

high school before she "ages out," and may earn her high school diploma at any time after that. The relief requested by Plaintiff, which will allow her to have a FAPE, is available now at APS.[7]

**Conclusion**

The Court finds that, based on a preponderance of the evidence in the record, Plaintiff has not demonstrated that she was prejudiced by any of the procedural deficiencies cited in the administrative record, including the failure of APS to have a current IEP in place for fall of 2003. This failure did not result in a denial of FAPE.  The AAO's conclusion that the deficiency resulted in a substantive harm is not consistent with the AAO's previous findings, and was not based on a preponderance of the evidence, even giving due weight to these administrative findings.

The AAO's legal conclusion is therefore reversed.  The Court declines to grant any form of relief to Plaintiff, finding that any harm to her educational achievement and opportunities comes as a result of her own apathy and decision to reject the numerous educational services and educational opportunities that have been made available to her by the APS.

**THEREFORE,**

**IT IS ORDERED** that Defendant's Motion to Dismiss Plaintiff's Claims for Compensatory Education Based on Mootness and Estoppel Grounds **(Doc. 90)** is hereby DENIED for reasons described above; and

**IT IS ORDERED** that Plaintiff's appeal of the administrative decision by the Administrative Appeals Officer pursuant to the IDEA is DENIED in that further compensatory

---

[7] It is curious that one of counsel's requests for compensatory education is to have the Court order APS to have a "point person" for Myisha in case she ever shows up for school.  This is already in place at Highland should Myisha decide to show up for school tomorrow.

education or other form of equitable relief is denied;[8]

**IT IS FURTHER ORDERED** that Defendant's appeal of the administrative decision by the Administrative Appeals Officer pursuant to the IDEA is GRANTED in that the administrative decision granting an award of compensatory education is REVERSED.

This Memorandum Opinion and Order disposes of this case in its entirety.   Judgment in accordance with this Memorandum Opinion and Order shall issue.

_____
UNITED STATES DISTRICT JUDGE

---

[8]  The appeal of the administrative record is not docketed as a motion, since that claim is a review on the record.